UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT DESHON COLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>DAWN BUSS, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-527-GSL-JEM |

OPINION AND ORDER

Robert Deshon Coleman, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) In accordance with 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Coleman is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Coleman is an inmate at Indiana State Prison (ISP). His complaint is somewhat difficult to follow, but it can be discerned that in April 2025, he was accused of inappropriately touching a female prison employee. He was transferred to segregation

for approximately one week while the incident was investigated. It appears he was released to general population at the end of the week. Based on these events, he sues eight defendants for money damages and other relief.

Coleman may be claiming that his Due Process rights were violated in connection with his transfer to segregation. However, the Fourteenth Amendment Due Process Clause does not create a liberty interest in remaining in the prison's general population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Instead, "an inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). To trigger a liberty interest, an inmate must be subjected to restrictive conditions that present a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484-85. There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019). It is not enough that conditions are "more severe than those found in the general prison population." *Hardaway*, 734 F.3d at 744. They must be very harsh or restrictive, in the vein of depriving a prisoner of "all human contact or sensory stimuli." *Id.*

Here, Coleman states that he was in segregation for one week, which is a brief period. He also does not describe unduly harsh or restrictive conditions. He claims that he had no mattress when he first got there, but this was a temporary issue resolved after approximately one day. He further alleges that "there is no sprinkler or ventilation system" in the segregation unit and that there were hooks on the bed "that inmates

could be chained to." He does not state that he was chained to the bed, or that he suffered an injury due to the alleged problems with the ventilation or fire safety equipment. The court cannot plausibly infer from his allegations that he was subjected to a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *See Hardaway*, 734 F.3d at 743 (a few months in segregation did not trigger a liberty interest "in the absence of exceptionally harsh conditions").

He may also be asserting that these conditions violated the Eighth Amendment. A violation of the Eighth Amendment's Cruel and Unusual Punishment Clause consists of two elements: (1) objectively, the condition must be sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, the prison official's state of mind must rise to the level of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and "not all prison conditions trigger eighth amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety." *James v. Milwaukee Cty*., 956 F.2d 696, 699 (7th Cir. 1992). On the second prong, the inmate must allege that the defendant acted with "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Coleman alleges that he went without a mattress for approximately 36 hours, during which time he had to sleep on "hard steel." While this was no doubt uncomfortable, this type of temporary discomfort does not give rise to an Eighth Amendment claim. *See Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) (observing

that "extreme deprivations are required to make out a conditions-of-confinement claim"); *see also Bradley v. Koziatek*, No. 23-cv-374, 2025 WL 1312244, at *4 (S.D. Ind. May 6, 2025) (depriving inmate of mattress for 35 hours did not rise to the level of Eighth Amendment violation); *Chandler v. Westphal*, Case No. 24-CV-491, 2024 WL 4332812, at *2 (N.D. Ind. Sept. 26, 2024) (inmate's loss of bedding for a week did not violate Eighth Amendment).

He also mentions problems with the ventilation system and fire safety equipment, but not in enough detail for the court to plausibly infer that they created such an inherently dangerous condition that they posed "an excessive risk" to his health or safety.[1] *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). "[F]ailing to provide a maximally safe environment," by itself, does not amount to an Eighth Amendment violation. *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). There is also no indication he suffered a physical injury as a result of these conditions; although he claims they caused him anxiety, that is not enough to bring a claim. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

He states in passing that his "Equal Protection" rights were violated. To assert an Equal Protection claim, a plaintiff must allege that a state actor purposely discriminated

---

[1] He also mentions that prison staff controlled the toilet and sink from outside his cell, which they turned on at regular intervals rather than upon request, apparently in an effort to avoid inmates intentionally flooding their cells. He does not allege that he was without a toilet or sink, nor does he describe any particular problem this practice caused him, other than that he would have preferred to control the toilet and sink himself. The court cannot plausibly infer that this temporary inconvenience amounted to an Eighth Amendment violation. *See Delaney*, 256 F.3d at 683.

against him on a prohibited basis, such as his race or sex. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020). If the disparate treatment is not based on a prohibited ground, it is permissible as long as it is not irrational. *Stevens v. Illinois Dept. of Transp.* 210 F.3d 732, 737-738 (7th Cir. 2000). In the prison context, "prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016).

A plaintiff can also state a "class-of one" Equal Protection claim by alleging that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Word v. City of Chicago*, 946 F.3d 391, 395–96 (7th Cir. 2020). However, "even at the pleading stage, a plaintiff must anticipate the burden of eliminating any reasonably conceivable state of facts that could provide a rational basis for the government's actions," and must "provide a sufficiently plausible basis to overcome the applicable presumption of rationality." *Walker v. Samuels*, 543 F. App'x 610, 611 (7th Cir. 2013). Additionally, class-of-one claims cannot be used to challenge discretionary decisions that are "based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 603 (2008). In the prison context, "choosing when and how to apply discipline [to a prisoner] are discretionary decisions falling under *Engquist*." *Atkinson v. Mackinnon*, No. 14-CV-736-BBC, 2015 WL 506193, at *1 (W.D. Wis. Feb. 6, 2015).

Coleman does not describe any intentional discrimination he suffered based on a prohibited ground. It is also evident from his allegations that he was temporarily sent to

segregation for a legitimate reason: a female prison employee reported that Coleman had inappropriately touched her. While he disagrees with her account, he cannot challenge prison officials' decision to punish him in this fashion under the Equal Protection Clause. Nor does he provide a factual basis from which the court could plausibly infer that similarly situated inmates were treated more favorably under similar circumstances. He has not alleged a plausible Equal Protection claim.

He additionally claims he was subjected to unlawful retaliation. To state a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Here, Coleman claims that he was sent to segregation "in retaliation" for the female employee's accusation, but this does not plausibly suggest he was punished for engaging in protected First Amendment activity. He mentions filing a number of grievances, but it can be discerned that he filed the grievances *after* the transfer to segregation had already occurred. Thus, there is no plausible link between the transfer and the grievances he filed. He has not alleged a First Amendment retaliation claim.

He further claims that he had "no access to a Torah or Bible" for the seven days he was in segregation. "The Free Exercise Clause prohibits the state from imposing a

substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal citation and quotation marks omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation and internal quotation marks omitted). The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers broader protections by preventing the state from placing a substantial burden on any aspect of an inmate's religious practice, even if it is not central to the religion. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). However, RLUIPA only provides for injunctive relief against state officials, not monetary damages. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

As Coleman describes it, no one denied him the right to pray or worship as he saw fit. He simply did not have access to a religious text for seven days. At most, he describes a *de minimis* burden on his religious practice, which is not actionable under the First Amendment. *Rapier v. Harri*s, 172 F.3d 999, 1006 n.4 (7th Cir. 1999); *see also Knight v. Hudson*, No. 3:25-CV-696-PPS-AZ, 2026 WL 456566, at *2 (N.D. Ind. Feb. 17, 2026) (inmate's claim that he was denied a religious meals over the course of a few days was a *de minimis* burden that was not actionable). There is also no basis to infer that prison officials have placed an ongoing burden on his religious practice that might warrant injunctive relief under RLUIPA. He will not be permitted to pursue this claim.

He may also be claiming that prison staff mishandled his grievances. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*,

635 F.3d 950, 953-54 (7th Cir. 2011). Thus, "the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Id.; see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). Thus, Coleman's allegation that he filed grievances about these issues but no one responded does not give rise to a plausible constitutional claim.[2] *See id.*

He also claims that he was denied "access to the courts" while in segregation. Inmates have a right of access to the courts grounded in the First and Fourteenth Amendments, but this is not an "abstract, freestanding right." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, it hinges on whether there was prejudice to a non-frivolous legal claim. *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). Thus, to state a claim, an inmate is required to "spell out" in at least minimal detail the connection between the defendant's conduct and the resulting prejudice to a potentially meritorious legal claim. *Id.* Coleman suggests that he needed certain "materials" while he was in segregation that he did not receive, but he does not describe what these materials were, nor does he allege any injury to a non-frivolous legal claim. He has not made the necessary allegations of prejudice to state a plausible claim on this ground.

He also claims that his "legal mail" was mishandled while he was in segregation. Inmates have a First Amendment right to receive and send mail, and "legal mail" is entitled to heightened protection. *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir.

[2] If prison staff made the grievance process unavailable to Coleman in connection with the claims asserted in this case, that may become relevant if an exhaustion defense is raised at a later stage. *See Woodford v. Ngo*, 548 U.S. 81, 102 (2006). However, his allegations do not give rise to an independent constitutional claim.

2005). However, "legal mail" is a term of art referring only to mail to or from the inmate's attorney that is clearly labeled as such on the outside of the envelope. *Id.* To protect the inmate's right to counsel, this type of mail cannot be opened outside the inmate's presence. *Id.* Other types of correspondence—even court orders or public case filings—can be opened and inspected outside of an inmate's presence without violating the First Amendment. *Kaufman*, 419 F.3d at 686; *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).

Coleman does not allege that prison staff opened or confiscated mail to or from his attorney outside his presence. As best as can be discerned, he is claiming that there was a temporary interruption in his receipt of other types of mail while he was in segregation. A temporary or isolated disruption in an inmate's mail does not give rise to a constitutional claim. *See Dobbey v. Uptown People's L. Ctr.*, No. 23-1885, 2023 WL 8106978, at *3 (7th Cir. Nov. 22, 2023). He also claims that internal prison procedures were violated in connection with the handling of his mail, but a violation of prison policy is not actionable under 42 U.S.C. §§ 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations").

Therefore, the complaint does not state a claim upon which relief can be granted. "[L]itigants in this circuit are ordinarily given the chance to amend their pleadings once as a matter of course" before a case is dismissed. *Newson v. Superior Ct. of Pima Cnty.*, 784 F. App'x 964, 965 (7th Cir. 2019); *see also Luevano v. Wal-Mart*, 722 F.3d 1014, 1022

(7th Cir. 2013). Accordingly, Coleman will be given an opportunity to file an amended complaint before the case is dismissed.

For these reasons, the court:

(1) GRANTS the plaintiff until **November 27, 2026**, to file an amended complaint; and

(2) CAUTIONS him that if he does not file an amended complaint, this case is subject to dismissal under 28 U.S.C. § 1915A.

SO ORDERED on October 26, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT